IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAYMOND PRESCOTT,

        Plaintiff,

v.                                                              CIV 03-1172 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

# **MEMORANDUM OPINION AND ORDER**

      Plaintiff Raymond Prescott applied for disability benefits due to degenerative changes and pain in his knees. After two remands by the Appeals Council, the Administration awarded him benefits commencing January 31, 1998. Happily, Plaintiff has fully recovered from bilateral full knee replacement surgery and is again working in the construction industry. The limited subject of the last remand, however, was whether Plaintiff was disabled from the period from July 15, 1995 to January 31, 1998. *See, e.g., Administrative Record* ("*Record*") at 16-28, 86-89, 442.

      In March 2003, Administrative Law Judge ("ALJ") Gerald R. Cole secured testimony from a vocational expert and denied benefits at Step 5. ALJ Cole found that for the period in question, Plaintiff retained the residual functional capacity to perform limited sedentary and light work such as cashier, surveillance system monitor, telephone answering service operator and gate guard. The Appeals Council declined review on August 1, 2003, thereby rendering the ALJ's decision final. *See, e.g., id.* at 9, 16-28.

      This matter is before the court on Plaintiff's motion to reverse or remand, where he asserts that ALJ Cole committed three errors. Only his physical impairments are at issue. *See Docs. 11,*

12.[1]  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  *Docs. 3, 4.*  Having read and carefully considered the entire voluminous record, the parties' arguments, and a recently-published decision from the Tenth Circuit, I find one aspect of the argument relating to the treating physician claim meritorious and therefore remand for further proceedings.

## I.  Factual And Procedural Background

The focus of this appeal concerns when Plaintiff became physically disabled, and whether the opinion of his treating physician Dr. Henry Wall should be given controlling weight.  Although ALJ Cole wrote a comprehensive opinion, to put these issues in context I set forth the factual and procedural background in some detail.

### A.  *Consultative Examination In Conjunction With The 1994 Application Revealed Knee Degeneration, But The Application Was Not Pursued Beyond Reconsideration Level*

Born in April 1950, Plaintiff first applied for benefits at age forty-four on October 20, 1994, alleging that he became disabled as of September 1994 due to knee trouble and carpal tunnel syndrome.  He was working in construction at the time he applied, but discontinued doing so shortly thereafter.  *See Record* at 98, 114, 155.  According to his medical records up to that point, Plaintiff had very few visits to the doctor from 1990 through 1994, and had only complained of wrist and knee pain just prior to applying for benefits.[2]

---

[1]  On July 19, 2004, in response to an inquiry by my staff, counsel for Plaintiff informed chambers that he would not be filing a reply and that the matter is ready for disposition.  *See* D.N.M.LR-CIV. 7.3(b).

[2]  Plaintiff's medical records to that point only showed that:  (1) a few times in 1990, Dr. Wall of the Veteran's Administration Medical Center saw Plaintiff to monitor his diet and weight in conjunction with a diagnosis of mild hypertension, *Record* at 140-43; (2) in April 1994, Plaintiff was seen at the emergency room of the Eastern New Mexico Medical Center for ankle pain; x-rays revealed "degenerative changes," but there was no fracture, and he was assessed with a sprained ankle, *id.* at 149-51; (3) in June

The Administration therefore sent Plaintiff to consulting examining physician Dr. H. John Erickson, who secured x-rays of Plaintiff's knees. *Id.* at 155.  Dr. Erickson was the first physician to diagnose Plaintiff as having "very severe degenerative arthritic changes" to his knees, and was of the opinion that Plaintiff would require surgery to correct the problems. *See id.* at 155-56.  Dr. Erickson and another agency physician provided opinions on Plaintiff's limitations and indicated that, although Plaintiff's knee problems affected his ability to walk and carry heavy weight, he retained the capacity to perform work in the sedentary to light range. *See id.* at 155-68.

The Administration denied benefits both at the initial and reconsideration levels based on Plaintiff's application materials, his scant medical records, and the consulting examination and findings. *See id.* at 102-137; *see also id.* at 111 (reconsideration denial states that "no additional evidence was submitted").  Although Plaintiff noted in his reconsideration disability report that he had doctor appointments scheduled in March and April of 1995, the record does not contain medical records from March or April of 1995, and Plaintiff was working during that time as a floor hand.  He worked in that job for four months, up to July 15, 1995. *See id.* at 137, 265, 331; *see also Doc. 12* at 5.  Plaintiff did not further pursue the 1994 application after it was denied on reconsideration.

### B. 1996 Knee Surgeries & Applications For Benefits

From July 15, 1995 to February 1997, Plaintiff did not work.  Although he did not use an assistive device to walk, by January 1996, Plaintiff was complaining of swelling and pain in both

---

1994, Dr. Wall referred Plaintiff to Eastern after he complained of numbness, pain, and loss of strength in his left wrist; x-rays revealed an unhealed fracture of indeterminate age, and Plaintiff's wrist was casted, *id.* at 144-48, 154; (4) three days before applying for benefits Plaintiff complained to Dr. Wall that his knees were hurting, for which Dr. Wall instructed Plaintiff to lose weight, increase exercise, and continue with Motrin; Plaintiff did not show up for a four-week followup visit to Dr. Wall, *id.* at 152-53.

knees, and constant pain in his left knee, particularly when bearing weight on that leg.  He could only walk approximately half a block.  *E.g., id.* at 22, 272.

He therefore elected to undergo two tibial osteotomies.[3]  He was discharged a few days after the January 1996 surgery with the physical restriction of "partial weight bearing left leg with walker."  *Id.* at 275; *see also id.* at 240, 272, 278, 399-400, 422-24.  Six weeks later, he had a "good" post-operative response and the plan was to consider scheduling surgery for the right knee.  By the summer he was "doing very well" and therefore scheduled surgery for the right knee in September.  *See id.* at 269, 379-83.  Upon his discharge a few days following the second surgery, he was again given the restriction of not bearing weight on the right leg and to keep the right leg in a brace.  Within six weeks of surgery, Prescott was able to partially bear weight on the right leg using crutches.  *See id.* at 240, 243, 359-78, 417, 420-21.

Meanwhile, Plaintiff had again applied for benefits in 1996.  He did so twice, right after each surgery, and again asserted an onset dating back to September 1994.  *E.g., id.* at 200-07.  After his first surgery Prescott indicated that it was "very painful" for him to stand or walk and that he could not do either "for very long at a time."  *Id.* at 215; *see also id.* at 227.  His typical day consisted of watching television and reading, and performing household chores such as cleaning, buying and stowing groceries for about two hours a day.  He could also take care of his personal needs and fix meals.  He tried to "walk as much as possible" to exercise, but could not only walk about 100 feet.  He could not climb stairs or drive.  Immediately following his second surgery he was more limited in his activities.  *See id.* at 227-31; *see also id.* at 236 (cannot

---

[3] And osteotomy is "[t]aking out part or all of a bone, or cutting into or through bone."  www.medterms.com.

perform household chores and on crutches immediately following second surgery), 250-51 (same).

### C. *Plaintiff's Return To Work In 1997 & Second Consulting Examining Report*

Each area of his knee where surgery was performed had been stabilized by a compression plate and four screws. Also, these surgeries did not reverse the "severe" degeneration in the "medial compartments" of Plaintiff's knees.[4] Prescott did, however, attempt to return to his prior work as a carpenter in February 1997, some five months following the second surgery. He found he could not do the job and left after two weeks. *See id.* at 18, 259, 265.

As it had with his first application, the Administration again sent Plaintiff to a consulting physician. Dr. Leonore A. Herrera examined Plaintiff on April 12, 1997, and indicated that Plaintiff reported that he

> continues to have knee pain and stiffness. He is limited in his ability to sit for more than 30 minutes, stand and walk more than 300 yards, climb stairs, go down inclines, walk on graded surfaces. He does no lifting. He does drive short distances. He last worked 2/97 in the construction department for the State of New Mexico Highway Department and had to quit because of his ability to kneel, stand, run, climb or squat. The patient denied any other history of surgery.

*Id.* at 284. Dr. Herrera also noted a

> [m]edical source statement regarding ability to do work-related activities: Lifting and squatting are limited by chronic knee pain and stiffness and slightly diminished function. Standing, walking and sitting are limited by knee pain when prolonged. He has problems going up inclines, graded surfaces and walking on graded surfaces as well. He has problems running, kneeling and squatting on a repetitive basis.

---

[4] For example, after the first surgery, x-rays still showed "[m]arked degenerative changes of both knees, severe in the medial compartments." *Record* at 270-71.

5

*Id.* at 285.[5] She observed that Plaintiff "walks with a side-to-side gait and right forward bent posturing," describing it as "steady gait but walked side-to-side with slightly knee bent posturing of forward kyphotic posturing as well." *Id.*

After Dr. Herrera's examination, Dr. Nickerson filled out a second residual functional capacity assessment. She concluded that having recovering from his surgeries, Plaintiff had the capacity to: lift twenty pounds occasionally; lift ten pounds frequently; stand or walk at least two hours in an eight-hour day; sit six hours in an eight-hour day; and push and pull without limitation. She further found that Plaintiff would occasionally be limited in climbing, balancing, stooping, kneeling, crouching, and crawling. *See id.* at 292-93; *see also id.* at 298-299 (Dr. Valerie G. Dillon, later agreed with this "light" residual functional capacity assessment).

In June 1997, less than two months after Dr. Herrera examined him and Dr. Nickerson made her assessment that Plaintiff could perform light work, Plaintiff began working as a grounds caretaker at an apartment building. Prescott testified that he performed this job thirty hours a week and was allowed to take breaks as needed if his knees hurt. He performed tasks such as mowing the grass using a riding lawn mower, cleaning up trash and leaves, making sure the plants were watered, fertilized and trimmed (by himself or others), and painting a little. He continued working at that job until February 1998. *See id.* at 18, 46-47, 63-64, 88-91, 259, 265.

### D. ALJ Pedron's September 1998 Decision To Award Benefits

---

[5] Dr. Herrera did not identify the "medical source statement" to which she was referring. Dr. Erickson's 1995 "medical source statement of ability" is the only document in the Record with the title she uses. I doubt that Dr. Herrera was referring to this document, however, because Dr. Erickson did not indicate Plaintiff had any problems sitting. *See id.* at 157-58. More likely Dr. Herrera was referring to Dr. Nickerson's 1996 residual functional capacity assessment, made at the time when Plaintiff was awaiting the second surgery. Although Dr. Herrera's description does not track Dr. Nickerson's conclusion verbatim, it is consistent with those conclusions. *See id.* at 170-71.

### *Based On Dr. Wall's Opinion Is Vacated*

Just before the first hearing held by ALJ Adrian Pedron, Plaintiff's treating physician, general practitioner Dr. Wall, submitted a residual functional capacity questionnaire. *Id.* at 330. In his July 13, 1998 questionnaire, Dr. Wall indicated that Plaintiff: is in "constant" pain; incapable of "even 'low stress' jobs;" can walk less than one-half block "without rest or severe pain;" can sit and stand only fifteen minutes at a time; can sit or stand/walk less than two hours in an eight-hour day; needs to alternate walking with sitting every fifteen minutes for five minutes at a time; uses a cane; must keep legs elevated at all times while sitting; and would likely be absent from work more than four times a month. *Id.* at 352-55.

In September, ALJ Pedron found that Plaintiff was not disabled prior to July 15, 1995, because that was the date Plaintiff was "last engaged in substantial gainful activity." *Id.* at 331. Based on Dr. Wall's findings, which "are inconsistent with even sedentary work," and Plaintiff's testimony that his attempts at work had been unsuccessful, ALJ Pedron awarded benefits commencing July 15, 1995. *See id.* at 331-333. On that day, Plaintiff had ceased working construction as a floor hand and was anticipating the knee surgeries. ALJ Pedron did not specifically discuss Plaintiff's nine-month job as grounds keeper.

The Appeals Council granted review on its own motion and vacated ALJ Pedron's decision. As for the physical impairments, it found that Dr. Wall's opinion was not supported by the medical evidence and that Plaintiff's work as a caretaker should have been considered substantial gainful activity. *See id.* at 344-45. It therefore remanded for, among other things, further consideration of Plaintiff's residual functional capacity for the entire period of disability alleged and for application of Acquiesence Ruling 92-6 for *Walker v. Secretary of Health &*

*Human Servs.,* 943 F.2d 1257 (10th Cir. 1991).  *Id.* at 345.

### *E.  In Subsequent Proceedings Plaintiff Stipulated July 15, 1995 As Onset Date*

On remand, ALJ Paul Keohane conducted another hearing in February 2000.  By that time, Plaintiff had undergone a total knee replacement of his left knee four months earlier and was scheduled to have the other knee replaced in a month.  *See id.* at 23, 34, 52, 398-99.  At that hearing, Plaintiff stipulated his onset date for purposes of disability would be July 15, 1995, instead of September 1994.  *See id.* at 66-67.

ALJ Keohane agreed to keep the record open for thirty days to give Plaintiff the opportunity to submit further evidence from Dr. Wall that he expected to be forthcoming.  He also agreed to hold a supplemental hearing in Albuquerque, and to issue subpoenas to nonexamining agency physicians Dr. Nickerson and Dr. Gabaldon (both of whom gave opinions on Plaintiff's residual physical and mental functional capacities, respectively), so that Plaintiff's counsel could question them.  *See id.* at 37, 80, 444-447, 458-461.  However, Counsel declined the supplemental hearing, and therefore ALJ Keohane issued his decision.  *See id.* at 599.

### *F.  ALJ Keohane's August 2000 Decision To Award Benefits As Of February 1998 Is Affirmed, But Remanded For Further Findings*

ALJ Keohane found the Acquiesence Ruling inapplicable.  *Id.* at 560.  He further found that Plaintiff became disabled as of the date he stopped working as a grounds caretaker in February 1998, based entirely on Plaintiff's testimony.  His reasoning in full was that:

> The claimant's testimony of symptoms and functional restrictions following the date he ceased working in February 1998 was supported by the evidence overall in the disabling degree alleged, and was therefore credible.
>
> Since February 1998 the claimant has retained a residual functional

> capacity which does not support sustained work activity on a
> regular basis at any exertional level. This conclusion is supported
> by the testimony at the hearing, and by Exhibits 2F, 10F, 11F and
> 17F,[6] all of which substantiate that he has experienced severe pain
> with prolonged periods of sitting, standing and walking, that he
> requires substantial periods of time to elevate his legs during the
> work day, and that he will undergo total knee arthroplasty of his
> right knee in the near future. ***In accordance with the observation
> of the Appeals Council in its remand order, I do not find the
> claimant's treating physician's opinion as to his functional
> restrictions to be supported by the evidence the disabling degree
> stated*** (Exhibit 10F). The evidence does not support a finding that
> the claimant must keep his lower extremities elevated throughout
> an entire eight hour workday, or that his pain is significant enough
> to interfere with his concentration or prevent him from tolerating
> even low stress work. However, I find that the combination of
> pain, difficulties with prolonged sitting, standing and walking, and
> the need for substantial periods of leg elevation prevent the
> claimant from working sustaining fulltime work activities on a
> regular basis.
>
> I am aware that the medical consultant has given her opinion that
> the claimant is capable of performing a full range of light work.
> However, that physician did not have the benefit of subsequent
> evidence and the ***claimant's testimony, which I find dispositive*** in
> this case. Her opinion is therefore not accorded significant weight
> herein.

*Id.* at 561 (paragraph numbers omitted) (emphasis added).

The Appeals Council affirmed the award of benefits as of that date, but remanded the matter because ALJ Keohane "did not address" whether Plaintiff was disabled between July 15, 1995 and February 1998. *Id.* at 583. It specifically instructed that on remand, an ALJ was to determine Plaintiff's residual functional capacity for that period and, if he became disabled prior to his return to work in 1997, then to also apply the "trial work" provisions of 20 C.F.R.

---

[6] According to the index to the Record – Exhibit 2F is Dr. Herrera's report; Exhibit 10F is Dr. Wall's opinion; Exhibit 11F contains medical record from 1999 through the second knee surgery in 1996; and there is no Exhibit 17F.

9

Case 2:03-cv-01172-KBM   Document 16   Filed 08/03/04   Page 10 of 15

§ 404.1592. *Id.* at 583-84.

As of the date that the Appeals Council issued its remand, the Supreme Court had decided *Barnhart v. Walton,* 535 U.S. 212 (2002), which effectively overruled the Tenth Circuit's decision in *Walker* and made the Acquiescense Ruling 92-6(10) that Judge Keohane had applied moot. Indeed, the Administration rescinded that ruling soon after the Appeals Council remanded. *See Social Security Notice,* 2002 WL 1752001 (issued 6/10/02).

On the second remand, ALJ Cole held a hearing and issued a detailed and comprehensive opinion that clearly sets forth his reasoning. I will discuss those portions of his findings that are relevant below in the analysis section.

## II.  Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## III.  Analysis

### A.  Trial Work Period

10

Citing *Walker* and the now-repealed Acquiesence Ruling, Plaintiff argues that ALJ Cole erred in "not allowing the Plaintiff to have such a work attempt, instead using that work attempt as 'supposed' substantial gainful employment." *Doc. 12* at 13.  However, ALJ Cole specifically elected not to consider the caretaker job as substantial gainful activity, which, if so found, could have disqualified Plaintiff from benefits at the outset.[7]  As the Appeals Council noted, entitlement to a trial work period only arises if a claimant is determined to be disabled.  *See* 20 C.F.R. § 404.1592 (a), (c)-(e).

### *B. Remand For Further Findings Is Required For Part Of The Treating Physician Issue*

Plaintiff gives three reasons for his claim that ALJ Cole erred in not giving Dr. Wall's opinion controlling weight.  He contends that ALJ Cole should have recontacted Dr. Wall about his opinion.  He also asserts that ALJ Cole did not discuss the medical evidence that contradicted the doctor's opinion.  Finally, he asserts that ALJ Cole did not consider all of the factors necessary to reject Dr. Wall's opinion.  *See Doc.* 12 at 9-12.  I disagree that the first and second assertions warrant a remand, but am compelled to remand under a recent Tenth Circuit decision as to the final argument.

Since there is nothing ambiguous or incomplete about Dr. Wall's opinion, ALJ Cole was not obligated to recontact him.  *E.g., White v. Barnhart,* 287 F.3d 903, 907 (10th Cir. 2002).  And because the issue before ALJ Cole was the extent of Plaintiff's residual functional capacity during

---

[7] *See Record* at 18 ("I have elected not to determine whether the claimant's post-onset activity . . . represents substantial gainful activity."); *see also* 20 C.F.R. § 1520(a)(4)(i) ("At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled."); *id.,* §1520 (b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

the period in question, Ruling 83-20 was not yet relevant. *See Gleason v. Barnhart,* CIV 02-1409 KBM (*Doc. 17* at 12-14 and cases cited therein; "As I read Ruling 83-20 . . . the necessity of calling a medical expert does not arise until there is a determination that a claimant is in fact disabled. . . . The fact that Plaintiff is awarded benefits commencing at a later date than the alleged onset is not controlling of whether a medical expert should be called under Ruling 83-20. . . . Instead, the first issue to address is whether . . . substantial evidence supports ALJ Connor's residual functional capacity finding").

Plaintiff suggests that because the first two ALJ's "accepted" Dr. Wall's opinion, ALJ Cole rejected Dr. Wall's opinion based on his own lay opinion rather than the medical evidence. The record does not support those conclusions. First, ALJ Pedron's conclusion was vacated by an Appeals Council decision specifically holding that the medical evidence did not support Dr. Wall's opinion. ALJ Keohane also found that Dr. Wall's opinion was not fully supported but awarded benefits for part of the period of disability claimed based on Plaintiff's testimony. The issues ALJ Keohane failed to address were those that ALJ Cole took up on remand. Therefore, ALJ Cole's decision concerning Dr. Wall's opinion is not in any way contrary to earlier decisions.

Second, unlike either ALJ Pedron or ALJ Keohane, ALJ Cole reviewed the medical evidence in detail. In connection with his discussion of whether Plaintiff meets a Listing for inability to ambulate, he discussed the medical evidence starting with Plaintiff's January 1996 knee surgery through the day before disability was established. That discussion included the medical reports following each surgery, Dr. Herrera's examination, and the three visits Prescott made to


doctors between the second knee surgery and February 1998:[8]

> beginning in February 1998 . . . the claimant's pain complaints relative to both knees increased dramatically . . . culminating in left total knee replacement on October 28, 1999 . . . . Indeed, the claimant's primary treating source, H. Wall, M.D. reported on July 13, 1998 . . . that the claimant's functional capacity related to his bilateral knee condition at that time was quite limited, a finding adopted by the decision of Judge Keohane . . . . . Nonetheless, the totality of the evidence from the Veteran's Administration and consultative examinations does not corroborate the claimant's limited abilities during the period July 15, 1995 through January 31, 1998 that meet the requirement of Listing § 1.02. Therefore, I do not find the functional capacity outlined by Dr. Wall in July 1998 to represent the claimant's credible limitations during the period July 15, 1998 through January 31, 1998, and therefore have afforded this opinion no weight for the period at issue, because it is not corroborated by his treatment notes.

*Id.* at 23. In his discussion of Plaintiff's residual functional capacity, ALJ Cole again found that Dr. Wall's July 1998 opinion is not "corroborated in his medical reports prior to February 1998." *Id.* at 25. In short, ALJ Cole did not give controlling weight to Dr. Wall's opinion of Plaintiff's limitations because it post-dated the period at issue and was not supported by the medical evidence for the period at issue. He plainly did not base his decision on speculation – he did so on

---

[8] On February 7, 1997, Plaintiff visited Dr. Wall complaining of chest pain at night. Subsequent tests to rule out angina, including a treadmill test where he walked for thirty-two minutes before his knee pain from "recent surgery" caused him to stop, were normal. *See Record* at 23, 387-88. Either at the time of this visit or thereafter, Plaintiff worked two weeks as a carpenter. *E.g, id.* at 259. At a visit two months later for condition unrelated to his knees, Plaintiff mentioned that he "still has pain but legs are stabilized now. . . .[w]orse pain [with] walking." *Id.* at 386. A few months later at a check-up with Dr. Wall, Plaintiff was "feeling well" and had lost 40 pounds and is watching his diet, but was "still having problems [with] rt knee" for which he was given Tylenol and told to return in 6 months. *Id.* at 385. A week later, he began his job as grounds caretaker. *Id.* at 259. A month after beginning work, Plaintiff returned, complaining of pain in his knees – "ambulate – 300 yds w/pain" – and asking whether he should have the hardware from the surgeries removed; he was told that taking the hardware out "will likely NOT relieve symptoms." He was to have x-rays taken and to return in six months. *Id.* at 384. In January 1998, Plaintiff returned to Dr. Wall complaining of knee pain getting worse and was to be seen by an orthopedist in February. *Id.* at 394.

13

the basis of medical evidence he discussed that was contradictory to Dr. Wall's conclusions. *See e.g., McGoffin v. Barnhart,* 299 F.3d 1248, 1252 (10th Cir. 2002); *Drapeau v. Massanari,* 255 F.3d 1211, 1212 (10th Cir. 2001).

However, Plaintiff also argues that ALJ Cole did not follow the correct analysis in rejecting Dr. Wall's opinion because the record does not indicate that he considered certain factors. *See Doc. 12* at 11 (citing, among other authority 20 C.F.R. 404.1427(d)(2)). Based on recent decisions by the Tenth Circuit in this area, I agree that remand is warranted.

As I read these decisions, the Tenth Circuit holds that the treating physician issue is two-fold. First, the ALJ must determine if the opinion is entitled to ***controlling*** weight. If it is not, then the ALJ must apply certain factors: to determine what weight to give the opinion, to clearly explain what weight the opinion is to given, and to identify the reasons why that weight is assigned. *See Langley v. Barnhart,* ___ F.3d ___, 2004 WL 1465774 (10th Cir. 2004) (citing *Watkins v. Barnhart,* 350 F.3d 1297 (10th Cir. 2003)); *Robinson v. Barnhart,* 366 F.3d 1078 (10th Cir. 2004) (same).

Application of some of the factors identified in these decisions would appear to strengthen ALJ Cole's conclusion regarding Dr. Wall's opinion. For example, Dr. Wall is not an orthopedist and saw Plaintiff only infrequently. Nevertheless, I cannot substitute my judgment for that of the agency. While ALJ Cole's decision clearly undertook the first prong of the inquiry, it does not undertake the second with the requisite degree of specificity. Therefore, I conclude that under Tenth Circuit decisions, he did not apply the necessary legal standards and a remand is necessary for that purpose.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 11)* is GRANTED IN PART, and the matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.